**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| David A. Perrill, Gregory Perrill, *and all others similarly situated,* <br><br> Plaintiffs, <br><br> v. <br><br> Equifax Information Services, LLC, <br><br> Defendant. | **CLASS ACTION COMPLAINT AND DEMAND FOR A JURY TRIAL** |

**PRELIMINARY STATEMENT**

1.      This is a consumer class action brought against Equifax Information Services, LLC (Equifax) for willfully violating the Fair Credit Reporting Act (FCRA), 15 U.S.C. § 1681 *et seq*. Equifax sold consumer reports to the Texas Comptroller of Public Accounts ("Texas Comptroller") in connection with the Texas Comptroller's collection of taxes from corporations. Equifax furnished credit reports on individual consumers who were officers of the corporations that owed the taxes. The Texas Comptroller pulled these reports in order to determine whether these consumers have assets that could be used to pay the corporations' tax debts.

The taxes that the Texas Comptroller collects are the involuntary debts of the corporations that owe them. These tax obligations are not owed by the individual consumers whose credit reports Equifax has sold to the Texas Comptroller. Furthermore, even if the Texas Comptroller has some right to collect these corporate tax obligations from officers of the corporations that owe the taxes, these tax obligations are not the

1

result of consumer-initiated credit transactions. The Texas Comptroller did not have a permissible purpose to obtain the credit reports of individual consumers and Equifax was not allowed to furnish those reports to the Texas Comptroller.

Equifax has been on notice since 2007 that it is a violation of the FCRA to allow collectors of involuntary debts such as tax debts to obtain the consumer reports of consumers against whom those involuntary debts are asserted. Equifax also knows that it has an affirmative duty to verify the uses for which its subscribers are accessing credit reports. Upon information and belief, Equifax has inadequate procedures in place to verify the Texas Comptroller's use of consumer reports. Additionally, Equifax failed to verify the uses for which the Texas Comptroller was accessing consumers' credit reports after Equifax learned in 2007 that it was not allowed to furnish credit reports to collectors of involuntary debts, such as the Texas Comptroller. Equifax has willfully violated the FCRA.

## PARTIES

2.      Plaintiffs David Perrill and Gregory Perrill are "consumers" as defined by 15 U.S.C. § 1681a(c). Both plaintiffs reside in Minnesota.

3.      Equifax is a "consumer reporting agency" as defined in 15 U.S.C. §§ 1681a (f) and (p).

## JURISDICTION

4.      This court has jurisdiction under 28 U.S.C. § 1331. Defendant was authorized to and has been doing business within this district at all relevant times.

## VENUE

5.      The activities alleged herein occurred within this district.

## FACTS

6.      On February 5, 2013, Wand Corporation (Wand), based in Eden Prairie, Minnesota, entered into a settlement agreement with the Texas Comptroller to resolve outstanding sales, excise and use tax allegedly owed by Wand to the State of Texas for the audit period January 1, 2008 through August 31, 2011. The settlement agreement provided that Wand would pay a total of $97,000 for its audit liability. The agreement provided that Wand would make one payment of $9,700 and ten payments of $8,730.

7.      Plaintiffs are officers of Wand but did not sign or guarantee the agreement.

8.      Upon information and belief, Wand missed a scheduled payment pursuant to the settlement agreement, which put Wand's account pursuant to the settlement agreement into arrears.

9.      In July 2013, shortly after Wand missed its scheduled payment, Equifax furnished the consumer reports of both plaintiffs to the Texas Comptroller.

10.     Plaintiff David Perrill sent letters to the Texas Comptroller dated August 2, 2013, September 3, 2013 and October 9, 2013, asking it to identify the permissible purpose for which it pulled his credit report. During telephone calls in the same period, David Perrill also asked employees in the Texas Comptroller's office why the Texas Comptroller pulled his credit report.

11.     The Texas Comptroller has not responded to plaintiff David Perrill's letters, but a manager in the Texas Comptroller's office told him in September 2013 that because

plaintiff was an officer of Wand, he was therefore a co-guarantor of the company's payment plan, even though he had not signed any document.

12.     Plaintiff Gregory Perrill sent a letter dated October 9, 2013, to the Texas Comptroller, asking it to identify the permissible purpose for which it pulled his credit report. The Texas Comptroller has not responded to plaintiff Gregory Perrill's letter.

13.     Plaintiffs are informed and believe that sometime prior to 2013 the Texas Comptroller applied to become a subscriber to Equifax's credit reporting services. When the Texas Comptroller applied to become a subscriber to Equifax's credit reporting services, Equifax was required to follow reasonable procedures designed to limit the furnishing of consumer reports to the purposes listed under 15 U.S.C. 1681b. In addition, Equifax was required to have the Texas Comptroller "certify" its permissible purposes for obtaining reports and, following that, Equifax was required to make a reasonable effort to verify the uses the Texas Comptroller had certified prior to furnishing any reports. Equifax has also been obligated continuously to cease furnishing consumer reports if it had reasonable grounds for believing that the Texas Comptroller was using the reports for impermissible purposes.

14.     Plaintiffs are informed and believe that when the Texas Comptroller became a subscriber, Equifax failed to follow reasonable procedures to limit the furnishing of consumer reports to the purposes listed in 1681b, failed to make a reasonable effort to verify the uses certified by the Texas Comptroller, and continued to furnish reports to the Texas Comptroller when it had reasonable grounds to believe that the Texas Comptroller was using the reports for impermissible purposes.

15.     By failing to follow reasonable procedures to limit the furnishing of consumer reports to the purposes listed in 1681b, failing to make a reasonable effort to verify the uses certified by the Texas Comptroller, and continuing to furnish reports to the Texas comptroller when it had reasonable grounds to believe that the Texas Comptroller was using the reports for impermissible purposes, Equifax willfully violated its obligations under 1681e(a).

16.     Alternatively, if Equifax did make a reasonable effort to verify the uses certified by the Texas Comptroller, then Equifax knew that the Texas Comptroller was obtaining consumer reports to collect involuntary tax debts and that the Texas Comptroller did not have a permissible purpose to obtain those reports. Therefore, Equifax willfully violated its obligations under 1681e(a).

17.     In July 2013, pursuant to its normal procedure, the Texas Comptroller obtained both plaintiffs' credit report from Equifax and used them to try to collect on Wand's involuntary tax obligation.

18.     Various individuals whose names and capacities are presently unknown to plaintiffs obtained and used their consumer report on or around July 2013, while acting for and within the scope of their business relationship with the Texas Comptroller. Said individuals did not have a lawful purpose for obtaining and using plaintiffs' consumer reports and therefore their receipt and use of plaintiffs' consumer report violated the FCRA.

## CLASS ACTION ALLEGATIONS

19.     Plaintiffs bring this action individually and as a class action, pursuant to Rule 23(a) and 23(b) of the Federal Rules of Civil Procedure, on behalf of the following Class:

All consumers whose consumer reports were furnished to the Texas Comptroller by Equifax in connection with the Texas Comptroller's efforts to collect on alleged involuntary tax obligations within the period beginning two years prior to the filing of this Complaint and continuing through the resolution of this action.

20.     The Class is so numerous that joinder of all members is impracticable. Although the precise number of Class members is known only to defendant, Equifax has furnished consumer reports to the Texas Comptroller in connection with its attempts to collect involuntary tax debt and other types of involuntary debt. Accordingly, plaintiffs estimate the class size numbers in the hundreds, if not thousands.

21.     Questions of law and fact common to the Class predominate over any questions affecting only individual Class members. The principal questions are whether the Texas Comptroller had a permissible purpose to obtain the credit reports of persons from whom it was attempting to collect involuntary tax debts and whether Equifax violated the FCRA by (i) failing to maintain reasonable procedures to limit the furnishing of consumer reports to the Texas Comptroller only for the permissible purposes listed under 1681b, (ii) failing to verify the uses certified by the Texas Comptroller prior to furnishing the Texas Comptroller with consumer reports, and (iii) furnishing the Texas Comptroller with consumer reports for purposes which Equifax knew or should have known were impermissible.

22.     Plaintiffs' claims are typical of the claims of the Class, which all arise from the same operative facts and are based on the same legal theories.

23.     Plaintiffs will fairly and adequately protect the interests of the Class. Plaintiffs are committed to vigorously litigating this matter and have retained counsel experienced in handling FCRA claims and class actions. Neither plaintiffs nor their counsel have any interests that might cause them not to vigorously pursue this claim.

24.     This action should be maintained as a class action because the prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members that would establish incompatible standards of conduct for the parties opposing the Class, as well as a risk of adjudications with respect to individual members that would as a practical matter be dispositive of the interests of other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

25.     Whether Equifax furnished the Texas Comptroller with consumers' credit reports in connection with the Texas Comptroller's efforts to collect on involuntary tax debts can be determined from the Texas Comptroller's business records. The identity of persons whose credit reports Equifax provided to the Texas Comptroller can also be determined from Equifax's records.

26.     A class action is a superior method for the fair and efficient adjudication of this controversy. The interest of the Class members in individually controlling the prosecution of their individual claims is slight because the maximum statutory damages are limited to between $100 and $1,000 under the FCRA. Management of the Class claims is likely to present significantly fewer difficulties than those presented in many individual

claims. The identities of the Class members may be obtained from the Texas Comptroller's business records

### First Claim for Relief—Against Equifax

27.     Plaintiffs reallege paragraphs 1-26 as though fully set forth herein.

28.     Equifax furnished consumer reports on plaintiffs to the Texas Comptroller for its use in collecting on involuntary tax debt allegedly owed by Wand.

29.     Equifax knew or should have known the Texas Comptroller did not have a permissible purpose within the scope of 15 USC § 1681b and thus was in violation of the FCRA.

30.     Plaintiffs seek statutory and punitive damages for Equifax's willful violations of the FCRA pursuant to 15 USC § 1681n (a) (1) (A) and § 1681n (a) (2).

**WHEREFORE**, plaintiffs seeks judgment against Equifax as follows:

(a) That an order be entered certifying the proposed Class under Rule 23 of the Federal Rules of Civil Procedure and appointing plaintiffs and their counsel to represent the Class;

(b) That judgment be entered against Equifax for statutory damages in the amount of not less than $100 and not more than $1,000 per violation per Class member, pursuant to 15 U.S.C. § 1681n (a) (2);

(c) That judgment be entered against Equifax for punitive damages in an amount determined by the jury;

(d) That the Court award reasonable attorney's fees and costs; and

(e) That the Court grant such other and further relief as may be just and proper.

**HEANEY LAW FIRM, LLC**

Date: **December 4, 2013**

**s/ Mark L. Heaney**

Mark L. Heaney (Atty ID #0333219)
13911 Ridgedale Drive, Suite 110
Minnetonka, Minnesota 55305-1773
Telephone: (952) 933-9655
Facsimile:  (952) 544-1308
Email: mark@heaneylaw.com

Andrew J. Ogilvie
Carol M. Brewer
ANDERSON, OGILVIE & BREWER, LLP
235 Montgomery St., Ste. 914
San Francisco, CA 94104
andy@aoblawyers.com
carol@aoblawyers.com
*A motion for admission pro hac vice will be filed.*

*Attorneys for Plaintiffs David Perrill, Gregory Perrill, and the proposed class.*