## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

DAVID A. PERRILL and
GREGORY PERRILL,

              Plaintiffs,

v.

                                      **MEMORANDUM OF LAW & ORDER**
                                      Civil File No. 13-3333 (MJD/JSM)

EQUIFAX INFORMATION
SERVICES, LLC,

              Defendant.

Andrew J. Ogilvie and Carol M. Brewer, Anderson Ogilvie & Brewer LLP, and
Mark L. Heaney, Heaney Law Firm, LLC, Counsel for Plaintiffs.

J. Anthony Love and Barry Goheen, King & Spalding, LLP, and Joseph W.
Lawyer, Messerli & Kramer, Counsel for Defendant.

## I.      INTRODUCTION

      This matter is before the Court on Defendant's Motion to Transfer Venue

to the United States District of Texas, Austin Division [Docket No. 14] and

Plaintiffs' Request to Strike Defendant's "Notice of Filing Additional Materials in

Support of Motion to Transfer" [Docket No. 44].  The Court heard oral argument

on June 27, 2014.  For the reasons that follow, the Court denies the motion to strike and transfers the case to the Western District of Texas.

## II.     BACKGROUND

### A.     Factual Background

#### 1.     Defendant Equifax

Defendant Equifax Information Services LLC ("Equifax") and CSC Credit Services ("CSC") are consumer reporting agencies as defined by the Fair Credit Reporting Act ("FCRA").  (Banks Decl. ¶ 5.)  They were separate companies until Equifax acquired CSC's credit reporting assets in December 2012.  (Id. ¶¶ 6, 8.)  CSC was located in Houston, Texas, and Equifax was and is located in Atlanta, Georgia.  (Id. ¶ 7.)

Before Equifax acquired CSC, CSC stored its consumer credit files on Equifax's computer database.  (Banks Decl. ¶¶ 6, 9.)  Otherwise, CSC and Equifax operated independently and entered their own separate contractual relationships with third parties that sought to purchase credit reports.  (Id. ¶ 10.)

In 2009, CSC entered into a contract to provide credit reports to the Texas Comptroller.  (Fisher Decl. ¶ 7.)  Pamela Sneed, an employee of the Texas Comptroller, dealt with CSC in relation to CSC's bid to offer credit reporting services to the Comptroller in Austin, Texas.  (Banks Decl. ¶¶ 12-13.)

2

The agreement between CSC and the Texas Comptroller was negotiated and executed in Texas.  (Fisher Decl. ¶ 8.)  CSC signed the agreement through its Vice President, Peggy Fisher, who resides in Houston, Texas.  (Id. ¶¶ 1, 9.)  CSC former employee, J.R. Brown, primarily managed CSC's relationship with the Texas Comptroller.  (Id. ¶ 10.)  At that time, Brown resided in Austin, Texas, and Equifax believes that is where he still lives.  (Id. ¶ 11.)

### 2.    Plaintiffs

Plaintiffs David Perrill and Gregory Perrill are Minnesota residents and officers of Wand Corporation ("Wand"), which is based in Minnesota.  (D. Perrill Decl. ¶¶ 1-3; G. Perrill Decl. ¶¶ 1-3.)

Wand fell behind in its payments of sales, excise, and use taxes to the Texas Comptroller.  (D. Perrill Decl. ¶ 4; G. Perrill Decl. ¶ 4.)  On February 5, 2013, Wand entered into a settlement agreement with the Comptroller to resolve the outstanding taxes owed by Wand.  (Id.)  Neither David Perrill nor Gregory Perrill signed or personally guaranteed the installment payment plan.  (D. Perrill Decl. ¶ 5; G. Perrill Decl. ¶ 5.)

In June 2013, Wand missed a scheduled payment under the settlement agreement.  (D. Perrill Decl. ¶ 6.)  In July 2013, shortly after Wand missed its

payment, the Texas Comptroller obtained consumer credit reports on both

Plaintiffs from Equifax.  (D. Perrill Decl. ¶ 7; G. Perrill Decl. ¶ 6.)  The

Comptroller obtained the reports so that it could try to collect Wand's missed

payments under the settlement agreement.  (Compl. ¶ 17; D. Perrill Decl. ¶ 8.)

The Comptroller opined that, because the Perrills were officers of Wand, they

were co-guarantors of the payment plan.  (Compl. ¶ 11; D. Perrill Decl. ¶ 8.)

Equifax delivered Plaintiffs' consumer reports to the Comptroller in

Austin, Texas.  (Banks Decl. ¶ 12.)  Plaintiffs aver that neither has ever asked the

Comptroller for credit or had any other dealings with the Comptroller.  (D.

Perrill Decl. ¶¶ 13-14; G. Perrill Decl. ¶¶ 9-10.)

Wand's tax obligation to the Comptroller is now fully satisfied.  (D. Perrill

Decl. ¶ 6.)

### B.    Procedural History

On December 4, 2013, Plaintiffs filed a Complaint against Equifax in this

Court.  The Complaint alleges: Count 1: willful violation of FCRA pursuant to 15

U.S.C. §§ 1681b, 1681n(a)(1)(A), and 1681n(a)(2).

FCRA authorizes a consumer reporting agency to furnish a consumer

report only if the person requesting the report has a permissible purpose to

4

obtain it.  15 U.S.C. § 1681b.  Section 1681b(a)(3)(A) authorizes a consumer reporting agency to furnish a credit report

> [t]o a person which it has reason to believe—
>
> intends to use the information in connection with a credit transaction involving the consumer on whom the information is to be furnished and involving the extension of credit to, or review or collection of an account of, the consumer . . . .

Plaintiffs allege that the Comptroller lacked a permissible purpose to obtain their Equifax credit reports to assist it in collecting the money that Wand owed.  They further assert that Equifax knew or should have known that the Comptroller did not have a permissible purpose to obtain those reports.  (Compl. ¶¶ 13-16.)  Plaintiffs seek to certify a nationwide class action representing "[a]ll consumers whose consumer reports were furnished to the Texas Comptroller by Equifax in connection with the Texas Comptroller's efforts to collect on alleged involuntary tax obligations within the period beginning two years prior to the filing of this Complaint."  (Compl. ¶ 19.)

Equifax now requests that this Court transfer the case to the Western District of Texas.

## III.    MOTION TO STRIKE

The Motion to Transfer was filed on February 21, 2014.  The Reply was filed April 2, 2014.  On June 24, Defendant filed a Notice of Filing of Additional Materials in Support of Motion to Transfer.  [Docket No. 43]  The filing consists of two exhibits that did not exist at the time Defendant's Reply was due: Exhibit 1 is the Texas Comptroller's Response and Objections to Plaintiffs' subpoena; Exhibit 2 is Plaintiffs' Initial Disclosures.  Both of these documents were created in mid-May 2014.  Defendant asserts that these two exhibits show recent developments in the case that bear on the arguments regarding the propriety of transfer to the Western District of Texas.

Plaintiffs have responded to Defendant's Notice with a motion to strike. Plaintiffs assert that Defendant has violated Local Rule 7.1(i), entitled Unsolicited Memoranda of Law.  The rule provides: "Except with the court's prior permission, a party must not file a memorandum of law except as expressly allowed under L.R. 7.1."  Plaintiffs request that the Court strike Defendant's Notice and award Plaintiffs the reasonable attorneys' fees incurred in responding to the Notice.

The Court denies the motion to strike.  The Notice is not a "memorandum of law" as discussed under the Local Rules.  It contains no legal argument; it

simply describes the exhibits.  The exhibits consist of information about the status of this case that is relevant to the Court's analysis of the Motion to Transfer and that did not exist at the time that Defendant filed its Reply.  They contain uncontested information about the documents exchanged in this very case.  This information could have been first raised at oral argument, yet Defendant provided the information before oral argument to avoid unfair surprise.  The motion to strike is denied.

## IV.    MOTION TO TRANSFER

### A.    Section 1404(a) Standard

Under 28 U.S.C. § 1404(a), "[f]or the convenience of the parties and witnesses, and in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  "In general, federal courts give considerable deference to a plaintiff's choice of forum and thus the party seeking a transfer under section 1404(a) typically bears the burden of proving that a transfer is warranted."  Terra Int'l, Inc. v. Miss. Chem. Corp., 119 F.3d 688, 695 (8th Cir. 1997).  When considering a motion to transfer, the Court must consider three factors: "(1) the convenience of the parties, (2) the convenience of the witnesses, and (3) the interests of justice."  Id. at 691.

However, "such determinations require a case-by-case evaluation of the

particular circumstances at hand."  Id.

### B.   Whether this Case Could Have Been Brought in the Western District of Texas

A civil action may be brought in--

(1) a judicial district in which any defendant resides, if all
defendants are residents of the State in which the district is located;

(2) a judicial district in which a substantial part of the events or
omissions giving rise to the claim occurred, or a substantial part of
property that is the subject of the action is situated; or

(3) if there is no district in which an action may otherwise be
brought as provided in this section, any judicial district in which any
defendant is subject to the court's personal jurisdiction with respect
to such action.

28 U.S.C. § 1391(b).

Equifax is subject to personal jurisdiction in the Western District of Texas,

and "a substantial part of the events or omissions giving rise to the claim

occurred" in that district.  This lawsuit could have been brought in the Western

District of Texas.

### C.   Convenience of the Parties and the Witnesses

When analyzing the convenience prong, courts typically consider "(1) the

convenience of the parties, (2) the convenience of the witnesses – including the

willingness of witnesses to appear, the ability to subpoena witnesses, and the

adequacy of deposition testimony, (3) the accessibility to records and documents,

(4) the location where the conduct complained of occurred, and (5) the

applicability of each forum state's substantive law." Terra Int'l, Inc., 119 F.3d at

696.

### 1.    Convenience of the Parties

The convenience of the named parties weighs against transfer.  Plaintiffs

are individuals who reside in Minnesota.  Defendant is a large corporation

headquartered in Georgia, not Texas.

### 2.    Convenience of the Witnesses

The convenience of the witnesses weighs strongly in favor of transfer.  In

analyzing this factor, "the Court focuses on non-parties because it is generally

assumed that witnesses within the control of the party calling them, such as

employees, will appear voluntarily in a foreign forum." Austin v. Nestle USA,

Inc., 677 F. Supp. 2d 1134, 1138 (D. Minn. 2009) (citations omitted).

The Texas Comptroller and its affiliated witnesses are key to this lawsuit.

Plaintiffs' own putative class definition names the Texas Comptroller twice.

Every member of the putative class has some relationship or connection to the

Comptroller.  And all of the critical events in this case are connected to the Texas Comptroller, from its agreement with CSC, to Wand's failure to pay taxes to the Comptroller and entering the settlement agreement with the Comptroller, to the Comptroller's efforts to collect the money owed and procurement of Plaintiffs' consumer credit reports from Equifax.  The vast majority of the relevant witnesses identified by Plaintiffs are located in Texas; they are either associated with the State of Texas or were associated with CSC.  These witnesses are outside the trial subpoena power of this Court.  Only one potential non-party witness resides in Minnesota.

### 3.    Accessibility of the Records

The location of the records weighs in favor of transfer.  The records that would be relevant to this case would be located in Georgia, at Equifax's headquarters, and in Texas, in the Comptroller's office.  Plaintiffs allege that the Comptroller will have the records regarding whether Equifax provided consumer credit reports to the Comptroller in connection with the Comptroller's effort to collect tax debts.  Also, the Texas Comptroller's records will be used to identify putative class members.  Plaintiffs' attempt to subpoena records from

the Comptroller is currently the subject of dispute in the Western District of

Texas.

### 4.      Minnesota Connection

The factor regarding the complained-of conduct weighs towards transfer.

The lawsuit was precipitated by taxes owed to the State of Texas for Wand's

business in Texas and by the Texas Comptroller's request for and receipt of

consumer credit reports of corporate officers of Wand.  It is also based on the

policies governing the relationship between CSC and the Comptroller, a

relationship created and managed in Texas.  As a class action, the lawsuit centers

on Equifax's provision of reports to the Texas Comptroller based on the

Comptroller's allegation that those consumers, located across the nation but

likely mostly in Texas, owed taxes to the Texas Comptroller.  On the other hand,

Equifax provided the reports from its headquarters in Atlanta; Equifax's

corporate policies were created in Atlanta; and Plaintiffs were damaged by

Equifax's conduct in Minnesota.

### D.      Interests of Justice

When analyzing the interest of justice, courts typically consider "(1)

judicial economy, (2) the plaintiff's choice of forum, (3) the comparative costs to

the parties of litigating in each forum, (4) each party's ability to enforce a judgment, (5) obstacles to a fair trial, (6) conflict of law issues, and (7) the advantages of having a local court determine questions of local law." Terra Int'l, Inc., 119 F.3d at 696.

### 1.    Judicial Economy

The judicial economy factor is neutral.  At this time, the difference in case load between the Western District of Texas and the District of Minnesota is not material.  This case has not yet progressed far in this District, so the Court has not yet expended significant time or effort on this lawsuit.  The disagreement regarding Plaintiffs' subpoena served on the Texas Comptroller is already likely to be heard in the Western District of Texas.

### 2.    Plaintiffs' Choice of Forum

Normally, considerable deference is given to the plaintiffs' choice of forum, particularly when the plaintiffs are residents of the chosen forum, as is true in this case.  However, Plaintiffs propose a nationwide class action with a class defined by putative class members who allegedly owed money to the Texas Comptroller.  Thus, the deference given to Plaintiffs' choice of forum is greatly reduced.  See, e.g., Wald v. Bank of Am. Corp., 856 F. Supp. 2d 545, 549 (E.D.N.Y.

2012); Smith v. HireRight Solutions, Inc., Civil Action No. 09–6007, 2010 WL 2270541, at *3-4 (E.D. Pa. June 7, 2010).

At this point, there is no evidence regarding the geographic makeup of such a class, but, logically, it would seem that the largest concentration of class members would reside in Texas because most of the persons who are affiliated with companies that did business in the State of Texas and owed money to the Texas Comptroller or who, themselves, owed money to the Comptroller would reside in Texas.  The class is highly unlikely to contain a large number of Minnesotans.  Thus, Plaintiffs' choice of forum is entitled to little weight in this case.

### 3. Comparative Costs to the Parties

The comparative costs to the parties factor weighs slightly against transfer because Plaintiffs are individuals who live in Minnesota, so transfer to Texas would increase their costs, while Equifax is a large corporation headquartered in Georgia.  However, Plaintiffs plead a nationwide class action, and the class members are unlikely to be centered in Minnesota and likely to be centered in Texas.

4.      **Ability to Enforce a Judgment, Obstacles to a Fair Trial, and Conflicts of Law Issues**

The ability to enforce a judgment, obstacles to a fair trial, and conflicts of law issues all are neutral.

5.      **The Advantages of Having a Local Court Determine Questions of Local Law**

Plaintiffs' Complaint is predicated upon federal law.  However, the determination of whether Plaintiffs were personally liable for Wand's tax liability depends on the application of Texas law: § 111.016 of the Texas Tax Code.  See also In re Tex. Pig Stands, 610 F.3d 937, 942 (5th Cir. 2010); Dixon v. State, 808 S.W.2d 721, 723-24 (Tex. Ct. App. 1991).  Thus, Defendant's liability may hinge on the interpretation of Texas tax law.

E.      **Conclusion**

Weighing all of the above factors, the Court concludes that transfer to the Western District of Texas is appropriate.  Plaintiffs have pled a nationwide class action in which the class members are likely concentrated in Texas.  The putative class members are defined by having allegedly owed taxes to the State of Texas and having had the Texas Comptroller request their consumer credit reports from Equifax in order to attempt to collect on those taxes.  The vast majority of non-party witnesses are located in Texas, outside the trial subpoena party of this

14

Court.  Critical events underlying Plaintiffs' Complaint occurred in Texas.

Interpretation of Texas law may be a critical component of this litigation.  This

case is closely tied to the Western District of Texas.

Accordingly, based upon the files, records, and proceedings herein, **IT IS**

**HEREBY ORDERED**:

1.   Plaintiffs' Request to Strike Defendant's "Notice of Filing
     Additional Materials in Support of Motion to Transfer"
     [Docket No. 44] is **DENIED**.

2.   Defendant's Motion to Transfer Venue to the United States
     District of Texas, Austin Division [Docket No. 14] is
     **GRANTED**.

3.   This case is transferred to the United States District Court for
     the Western District of Texas.

Dated:  June 30, 2014                    s/ Michael J. Davis
                                         Michael J. Davis
                                         Chief Judge
                                         United States District Court

15