IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

FILED
16 AUG 31 PM 2:50
CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____
            DEPUTY CLERK

**DAVID A. PERRILL, GREGORY PERRILL, and
ALL OTHERS SIMILARLY SITUATED,**
Plaintiffs,

-vs-                                                    Case No.  A-14-CA-612-SS

**EQUIFAX INFORMATION SERVICES, LLC,**
Defendant.

## O R D E R

BE IT REMEMBERED on this day the Court reviewed the file in the above-styled cause, and specifically Defendant's Motion to Dismiss [#111], Plaintiffs' Response [#112] in opposition, and Defendant's Reply [#115] in support. Having considered these documents, the case file as a whole, and the applicable law, the Court enters the following opinion and order.

### Background

This is a consumer class action arising under the Fair Credit Reporting Act (FCRA), 15 U.S.C. § 1681. Plaintiffs David and Gregory Perrill (Plaintiffs) are officers of Wand Corporation (Wand). First Am. Compl. [#110] ¶ 8. Wand, which does business in Texas, fell behind on its tax payments. *See id.* Wand and the Texas Comptroller (Comptroller) entered into a settlement agreement detailing Wand's outstanding debt and a schedule for payments. *See id.* Plaintiffs did not sign or guarantee the agreement. *See id.* Wand soon missed a payment under the agreement. *See id.* ¶ 20. Defendant Equifax Information Services, LLC (Equifax) provided Plaintiffs' consumer credit reports to the Comptroller pursuant to a contract between them. *See id.* ¶¶ 20–21. The Comptroller represented to Equifax that "it was using the reports to collect taxes." *Id.* ¶ 23.

Plaintiffs allege Equifax willfully violated two provisions of the FCRA: (1) § 1681b, by providing Plaintiffs' consumer reports to the Comptroller without having reason to believe the Comptroller had a permissible purpose; and (2) § 1681e(a), for failing to maintain reasonable procedures to limit the provision of consumer reports to the purposes listed under § 1681b. *See id.* ¶¶ 37–38. Plaintiffs contend these violations constituted an invasion of their privacy. *See id.* ¶¶ 39–40. Plaintiffs bring the action individually and as a class action purporting to represent "[a]ll consumers whose consumer reports were furnished by Equifax to the Comptroller from December 4, 2011 to the date of class certification," excluding (i) consumers against whom the Comptroller had a lien or judgment prior to obtaining the consumer's report and (ii) consumers with whom the Comptroller had an agreement to pay taxes prior to obtaining the consumer's report. *See id.* ¶ 27.

Over a year ago, the Court granted Equifax's Motion to Stay [#101] in light of the Supreme Court's then-pending decision in *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016). *See* Order [#105] at 1. After the Supreme Court decided *Spokeo*, Plaintiffs filed their First Amended Complaint [#110]. Equifax now moves to dismiss the case under Federal Rules of Civil Procedure 12(b)(1) for lack of standing and, in the alternative, 12(b)(6) for failure to state a claim for relief. *See* Mot. Dismiss [#111] at 4–5.

## Analysis

### I.   Motion to Dismiss—Legal Standard

#### A.   Rule 12(b)(1)

A motion under Rule 12(b)(1) asks a court to dismiss a complaint for lack of subject matter jurisdiction. FED. R. CIV. P. 12(b)(1). "A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case." *Home*

*Builders Ass'n of Miss., Inc. v. City of Madison, Miss.*, 143 F.3d 1006, 1010 (5th Cir. 1998) (internal quotation marks omitted). Motions to dismiss under Rule 12(b)(1) challenge a court's "very power to hear the case," and the court may therefore "weigh the evidence and satisfy itself" subject matter jurisdiction exists. *MDPhysicians & Assocs., Inc. v. State Bd. of Ins.*, 957 F.2d 178, 181 (5th Cir. 1992) (internal quotation marks omitted).

Article III of the Constitution limits the jurisdiction of federal courts to cases and controversies. *U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 395 (1980). "One element of the case-or-controversy requirement is that [plaintiffs], based on their complaint, must establish that they have standing to sue." *Raines v. Byrd*, 521 U.S. 811, 818 (1997). To meet the standing requirement a plaintiff must show (1) she has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000); *Consol. Cos., Inc. v. Union Pacific R.R. Co.*, 499 F.3d 382, 385 (5th Cir. 2007); *Fla. Dep't of Ins. v. Chase Bank of Tex. Nat'l Ass'n*, 274 F.3d 924, 929 (5th Cir. 2001) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)). "The party invoking federal jurisdiction bears the burden of establishing these elements." *Lujan*, 504 U.S. at 561.

### B.  Rule 12(b)(6)

Federal Rule of Civil Procedure 8(a)(2) requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). A motion under Federal Rule of Civil Procedure 12(b)(6) asks a court to dismiss a complaint for

"failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). The plaintiff must plead sufficient facts to state a claim for relief that is facially plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 566 U.S. at 678. Although a plaintiff's factual allegations need not establish that the defendant is probably liable, they must establish more than a "sheer possibility" that a defendant has acted unlawfully. *Id.* Determining plausibility is a "context-specific task," and must be performed in light of a court's "judicial experience and common sense." *Id.* at 679.

In deciding a motion to dismiss under Rule 12(b)(6), a court generally accepts as true all factual allegations contained within the complaint. *Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164 (1993). However, a court is not bound to accept legal conclusions couched as factual allegations. *Papasan v. Allain*, 478 U.S. 265, 286 (1986). Although all reasonable inferences will be resolved in favor of the plaintiff, the plaintiff must plead "specific facts, not mere conclusory allegations." *Tuchman v. DSC Commc'ns Corp.*, 14 F.3d 1061, 1067 (5th Cir. 1994). In deciding a motion to dismiss, courts may consider the complaint, as well as other sources such as documents incorporated into the complaint by reference, and matters of which a court may take judicial notice. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

## II. Application

### A. Standing

In *Spokeo*, the Supreme Court recently addressed the standing requirements. 136 S. Ct. at 1545–50. The Court confirmed that "[t]o establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id.* at 1548 (quoting *Lujan*, 504 U.S. at 560). With regard to concreteness, the Court reiterated that both tangible and intangible injuries can suffice. *See id.* at 1549. "In determining whether an intangible harm constitutes injury in fact, both history and the judgment of Congress play important roles." *Id.* First, courts should consider "whether an alleged intangible harm has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts." *Id.* Second, Congress "may 'elevat[e] to the status of legally cognizable injuries concrete, *de facto* injuries that were previously inadequate in law . . .'" and "has the power to define injuries . . . that will give rise to a case or controversy where none existed before." *Id.* (quoting *Lujan*, 504 U.S. at 578).

At the same time, the Court stated, "Article III standing requires a concrete injury even in the context of a statutory violation," emphasizing "a bare procedural violation, divorced from any concrete harm" would not satisfy the injury-in-fact requirement. *Id.* at 1543, 1549. Sometimes, however, "the violation of a procedural right granted by statute can be sufficient . . . to constitute injury in fact . . . ." *Id.* at 1544. The Court offered two examples:

> (1) "[A] group of voters' 'inability to obtain information' that Congress had decided to make public is a sufficient injury . . ."; and
>
> (2) "[T]wo advocacy organizations' failure to obtain information subject to disclosure under the Federal Advisory Committee Act 'constitutes a sufficiently distinct injury' . . . ."

*Id.* at 1549–50 (internal citation omitted).

In this case, Plaintiffs claim Equifax violated §§ 1681b and 1681e of the FCRA by providing their credit reports to the Comptroller, causing Plaintiffs to suffer an invasion of privacy. *See* First Am. Compl. at ¶¶ 39–40. According to Equifax, this alleged harm is an example of the "bare violation of a statutory right" that the Court in *Spokeo* determined did not meet the concrete injury requirement. *See* Mot. Dismiss [#111] at 6. Specifically, Equifax claims an invasion of privacy is "abstract," and Plaintiff's "mere disclosure of personal information" does not amount to a concrete harm. *Id.* at 7.

Following the analysis identified in *Spokeo*, this Court first considers whether invasion of privacy "has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit . . . ." *Spokeo*, 136 S. Ct. at 1549. Invasion of privacy is widely recognized in common law tort. *See Witt, et al. v. Corelogic Saferent, LLC*, No. 3:15-cv-386, 2016 WL 4424955, at *12 (E.D. Va. Aug. 18, 2016) ("The common law has long recognized a right to personal privacy, and 'both the common law and the literal understandings of privacy encompass the individual's control of information concerning his or her person.'") (quoting *U.S. Dept. of Justice v. Reporters Comm. for Freedom of Press*, 489 U.S. 749, 763 (1989)); *Mey v. Got Warranty, Inc.*, No. 5:15-cv-101, 2016 WL 3645195, at *3 (N.D. W. Va. June 30, 2016) ("Almost all states recognize invasion of privacy as a common law tort.") (citing Eli A. Meltz, *No Harm, No Foul? "Attempted" Invasion of Privacy and the Tort of Intrusion Upon Seclusion*, 83 FORDHAM L. REV. 3431, 3441 (2015)). Further, as Plaintiffs argue, an invasion of privacy injury is similar to the harm forming the basis of an intrusion upon seclusion claim, which holds a person liable for "intentionally intrud[ing], physically or

otherwise, upon the solitude or seclusion of another or his private affairs or concerns . . . ." *See* Resp. [#112] at 5 (citing *Restatement (Second) of Torts* § 652B (1977)).[1]

In addition, Congress's judgment in enacting the FCRA was to provide consumers a right to privacy. The plain language of the statute as well as the legislative history illustrate this intent. *See* 15 U.S.C. § 1681(4) ("There is a need to insure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy."); *Safeco v. Burr*, 551 U.S. 47, 52 (2008) ("Congress enacted FCRA . . . to protect consumer privacy."); Resp. [#112] at 6 (citing legislative history); *Thomas v. FTS USA, LLC*, No. 3:13-cv-825, 2016 WL 3653878, at *8 (E.D. Va. Jun. 30, 2016) ("It is clear from the statute's legislative history that Congress intended that the FCRA be construed to promote the credit industry's responsible dissemination of accurate and relevant information and to maintain the confidentiality of consumer reports."); *Hawkins v. S2Verify*, No. C 15-03502 WHA, 2016 WL 3999458, at *5 (N.D. Cal. Jul. 26, 2016) ("[Under the FCRA], Congress decided to restrict access to information regarding arrests older than seven years, which bestowed a degree of privacy on that information.").

Considering this history and Congress's judgment, the Court finds an invasion of privacy within the context of the FCRA constitutes a concrete harm that meets the injury-in-fact requirements. The Court is not alone in this holding. *See Witt*, 2016 WL 4424955, at *12 ("Accordingly, it has long been the case that an unauthorized dissemination of one's personal information, even without a showing of actual damages, is an invasion of one's privacy that

---

[1] Equifax argues the elements of an intrusion upon seclusion claim differ from Plaintiffs' alleged FCRA violation. Reply [#115] at 5. The Supreme Court decision in *Spokeo*, however, does not require the elements to be identical. *See Spokeo*, 136 S. Ct. at 1559. Rather, the harm of invasion of privacy must be *related to* one that has traditionally "provid[ed] a basis for a lawsuit." *Id.*

constitutes a concrete injury sufficient to confer standing to sue."); *Thomas*, 2016 WL 3653878, at *11 (same); *Burke v. Fed. Nat'l Mortg. Ass'n*, No. 3:16cv153-HEH, 2016 WL 4249496, at *4 (E.D. Va. Aug. 9, 2016) ("Plaintiff's alleged violation of privacy is a concrete harm, even if that harm does not lead to other, more tangible harms."); *Hawkins*, 2016 WL 3999458, at *5 (Plaintiff's alleged injury to his privacy interest was concrete and thus plaintiff established standing.); *Hancock v. Urban Outfitters, Inc.*, No. 14-7047, 2016 WL 3996710, at *3 (D.C. Cir. Jul. 26, 2016)[2] (Plaintiffs' allegations that Defendant violated two of Washington, DC's consumer protection laws did not confer standing because Plaintiffs did "not allege for example, *any invasion of privacy*, increased risk of fraud or identify theft, or pecuniary or emotional injury.") (emphasis added).[3]

Some of the cases Equifax cites to establish Plaintiffs' lack of standing do not address the same injury—invasion of privacy—that Plaintiffs allege. *See Peters v. St. Joseph Servs. Corp.*, 74 F. Supp. 3d 847, 854 (S.D. Tex. 2015) (Plaintiff's alleged increased risk of "future identity theft/fraud" did not constitute a cognizable injury); *Reilly v. Ceridian Corp.*, 664 F.3d 38, 42 (3d Cir. 2011) (Plaintiffs' "allegations of hypothetical, future injury [by potential hacker as a result of a data breach] are insufficient to establish standing"). Other cases Equifax refers to fail to properly analyze the concrete injury prong as explained in *Spokeo*, and instead summarily state invasion of privacy does not constitute an injury in fact. *See Khan v. Children's Nat'l Health Sys.*, No. TDC-15-2125,

---

[2] Interestingly, Equifax requests this Court follow the D.C. Circuit's reading of *Spokeo* in *Hancock* even though the court there acknowledged invasion of privacy was a concrete harm. *See* Reply [#115] at 3–4.

[3] In the context of other federal statutes, courts have similarly found, post-*Spokeo*, that an invasion of privacy is an intangible injury that constitutes a concrete harm. *See In re Nickelodeon Consumer Protet. Lit.*, No. 15-1441, 2016 WL 3513782, at *7 (3d Cir. Dec. 8, 2015) ("[T]he unlawful disclosure of legally protected information" in violation of the Video Privacy Protection Act constituted a concrete injury.); *Mey v. Got Warranty, Inc.*, No. 5:15-CV-101, 2016 WL 3645195, at *8 (N.D. W. Va. Jun. 30, 2016) (The violation of plaintiff's right to privacy as established by the Telephone Consumer Protection Act constituted a concrete injury.).

2016 WL 2946165, at *6 (D. Md. May 19, 2016) (Plaintiff "has not identified any potential damages arising from [her loss of privacy] and thus fails to allege a 'concrete and particularized injury.'") (internal citation omitted); *In re Zappos.com, Inc.*, 108 F. Supp. 3d 949, 962 n.5 (D. Nev. 2015) ("Even if Plaintiffs adequately allege a loss of privacy, they have failed to show how that loss amounts to a concrete and particularized injury."). The Court finds these cases unpersuasive.

Equifax does cite two cases where the District Courts for the Southern District of Ohio and the Eastern District of Wisconsin found the plaintiffs' alleged loss of privacy injury was insufficient under the FCRA and the Federal Debt Collection Practices Act, respectively. *See Smith v. Ohio State Univ.*, No. 2:15-CV-3030, 2016 WL 3182675, at *1 (S.D. Ohio Jun. 8, 2016); *Groshek v. Time Warner Cable, Inc.*, No. 15-C-157, 2016 WL 4203506, at *1 (E.D. Wis. Aug. 9, 2016). These cases, however, improperly focus on the plaintiffs' failure to allege actual damages. *See Smith*, 2016 WL 3182675, at *4 ("Plaintiffs admitted that they did not suffer a concrete consequential damage as a result of [defendant's] alleged breach of the FCRA."); *Groshek*, 2016 WL 4203506, at *3 (Plaintiff did not allege concrete harm because he stated "I do not know of any actual damages that I am claiming nor do I believe I've ever actually claimed actual damages against [the defendant] nor do I intend to."). The Court is not convinced by this reasoning since *Spokeo* does not require a plaintiff to allege actual damages. In fact, the Supreme Court stated, "the violation of a procedural right granted by statute can be sufficient in some circumstances to constitute injury in fact. In other words, a plaintiff in such a case need not allege any *additional* harm beyond the one Congress has identified." *Spokeo*, 136 S. Ct. at 1549; *see id.* at 1552 (J., Thomas, concurring) ("Our contemporary decisions have not required a plaintiff to assert an actual injury beyond the violation of his personal legal rights to satisfy the 'injury-in-fact' requirement."). When history and Congress have

established an injury resulting from a statutory violation, such as an invasion of privacy, is "a legally cognizable injur[y]," a plaintiff need not show any additional harm. *Spokeo*, 136 S. Ct. at 1549.

In sum, Plaintiffs' alleged invasion of privacy is a concrete harm. The Court DENIES Equifax's Motion to Dismiss Plaintiffs' claims based on lack of standing under Rule 12(b)(1).

**B.     Failure to State a Claim**

Plaintiffs claim Equifax violated two provisions of the FCRA: § 1681b(a)(3)(A) and § 1681e(a).

**1.     Section 1681b(a)(3)(A)**

Section 1681b limits the circumstances in which consumer reporting agencies can provide consumer reports. To properly assert a violation of § 1681b(a) and recover statutory damages, a plaintiff must allege (1) there was a "consumer report"; (2) the defendant used or obtained the report; (3) without a permissible purpose; and (4) the defendant acted willfully. 15 U.S.C. §§ 1681b(a), 1681n(a)(1)(A). Because Plaintiffs cannot show Equifax acted willfully, the Court does not address the remaining elements of the claim.

The Supreme Court has held that "willfully," as used in the FCRA, requires a showing of knowing misconduct or recklessness. *See Safeco*, 551 U.S. at 57. In addition, subjective bad faith does not support a willfulness finding if the defendant acted in accordance with an objectively reasonable interpretation of an ambiguous statute. *See id.* at 70 n.20. To determine if the defendant "ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless," and was thus reckless, the *Safeco* Court examined whether the plain language of the statute was "less-than-pellucid," whether the defendant's proposed interpretation had a

foundation in the statutory text, and whether the court of appeals or the Federal Trade Commission (FTC) provided any guidance. *See id.* at 69–70.

Plaintiffs allege Equifax wilfully violated § 1681b(a) because it did not have reason to believe the Comptroller had a permissible purpose. *See* First. Am. Compl. [#110] ¶ 37. Equifax counters it falls within § 1681b(a)(3)(A), which allows a consumer reporting agency to furnish a consumer report to a person it has reason to believe "intends to use the information in connection with a credit transaction involving the consumer on whom the information is to be furnished and involving the extension of credit to, or review or collection of an account of, the consumer . . . ." *See* Mot. Dismiss [#111] at 12. This provision, according to Equifax, allows consumer reporting agencies to provide "consumer reports to state taxing agencies for the purpose of collecting back taxes."[4] *Id.* at 11.

The statute itself does not shed much light on the issue. The FCRA's text does not explicitly include or exclude tax collection as a permissible purpose under § 1681b(a)(3)(A). *See Safeco*, 551 U.S. at 69–70. (finding "objectively unreasonable" standard as not met, in part because the statute was "silent on the point" at issue and thus "less-than-pellucid").

Plaintiffs argue a taxpayer's obligation to pay taxes is not a "credit transaction" since FCRA defines "credit" as "the right granted by a creditor to a debtor to defer payment of debt," and taxpayers do not have a right to defer payment of taxes. Resp. [#112] at 12 (quoting 15 U.S.C. §§ 1681a(r)(5), 1691a(d)). Equifax responds that a taxpayer does have a right to defer payment of

---

[4] Equifax also makes a qualified immunity argument in two footnotes. *See* Mot. Dismiss [#111] at 19 n.11; Reply [#115] at 9 n.7. At this time, the Court declines to make a qualified immunity determination based on the record before it. If Plaintiffs file an Amended Complaint, both parties are encouraged to fully brief the issue.

taxes in certain circumstances, establishing a "credit transaction" between the tax payer and the Comptroller. *See* Reply [#115] at 6 (citing TEX. TAX CODE § 1513.401, which allows a company to defer payment of sales taxes due until the month after the sale). Equifax's interpretation of the provision has a foundation in the text: Plaintiffs had a right to defer payment of their company's delinquent taxes under the settlement agreement and thus fall within the statute's definition of a "credit transaction." *See Safeco*, 551 U.S. at 69–70.

The authority on this issue is scant. Neither party has pointed to a case directly addressing whether tax collection constitutes a permissible purpose under § 1681b(a)(3)(A). Indeed, after conducting its own research, the Court did not find a single case, from the federal courts of appeal or otherwise, that would have put Equifax on notice that the Comptroller did not have a permissible purpose. In support of their argument, Plaintiffs rely on *Pintos v. Pac. Creditors Ass'n*, 504 F.3d 792 (9th Cir 2007), which the Ninth Circuit has withdrawn, dicta from *Stergiopoulos & Ivelisse Castro v. First Midwest Bancorp, Inc.*, 427 F.3d 1043, 1047 (7th Cir. 2005), and two cases from the District Court for the Northern District of Illinois. *See* Resp. [#112] at 15–16. These cases determined a "credit transaction" under § 1681b(a)(3)(A) is one in which the consumer directly participates and voluntarily seeks credit. According to Plaintiffs, because a taxpayer does not voluntarily seek credit from the Comptroller, this case law supports excluding tax collection as a permissible "credit transaction." *See id.* at 15–16. First, the Court does not consider *Pintos* since it has been withdrawn. Second, the Court does not find Plaintiffs' inference—that a taxpayer does not voluntarily seek credit—is as obvious as Plaintiffs claim. One could reasonably argue, as Equifax does, that a taxpayer does initiate a credit transaction with the Comptroller merely by electing to do business in

Texas or by signing an settlement agreement to defer payment of delinquent taxes.[5] *See* Mot. Dismiss [# 111] at 17 n.10; Reply [#115] at 8 n.6.

The only authority directly on point is the FTC's "40 Years of Experience with the Fair Credit Reporting Act, An FTC Staff Report with Summary of Interpretations" (July 2011)[6] (FTC Report), which states: "A tax collection agency does not have a permissible purpose to obtain a consumer report to collect delinquent tax accounts because [§ 1681b(a)(3)(A)] applies only to 'credit' accounts." FTC Report, 2011 WL 3020575, at *38 (2011). The FTC Report is not binding and does not have the force or effect of regulations or statutory provisions. *See id.* at *4. Further, the FTC is no longer the entity with the "primary regulatory and interpretive roles under the FCRA" since the Consumer Financial Protection Act (CFPA) delegated those powers to the Consumer Financial Protection Bureau (CFPB). *See id* at *2. The FTC's Report serves to only assist the CFPB in making its own, independent interpretations of the statute.[7] *See id.* at *5. The Court cannot conclude from this non-binding report, standing alone, that Equifax "ran a risk of violating the law

---

[5] Equifax also argues the consumer-initiated transaction rule does not apply to the FCRA because it conflicts with the statutory scheme. For example, § 1681b(c)(1)(A) lays out requirements for a consumer reporting agency to furnish a report to any consumer under § 1681b(a)(3)(A) "in connection with any credit . . . transaction that *is not initiated by the consumer* . . . ." (emphasis added). Quoting the dissent in *Pintos*, Equifax argues § 1681b(c)(1)(A) "clues us in on the fact that section 1681b(a)(3)(A) doesn't itself require that consumers initiate anything." *See* Mot. Dismiss [#111] at 17. Because the Court finds it was reasonable for Equifax to believe Plaintiffs initiated the tax transaction at issue, it is unnecessary to address whether the consumer-initiated transaction rule applies to § 1681b(3)(A).

[6] This report replaced the FTC's 1990 Official Staff Commentary (1990 Commentary) in 2011. The cited provision in the 1993 and 2011 versions are substantively equivalent.

[7] "Prior to the passage of the CFPA, FTC staff had been working on an updated Commentary as a replacement for the 1990 Commentary. As a result of the CFPA, however, much of the authority of the Commission and the federal financial agencies to publish rules, regulations, or guidelines under the FCRA transfers to the CFPB. In this changed context, [the FTC] instead publish[ed] a compendium of interpretations [(the FTC Report)] that it believe[d would] be of use to the CFPB staff, the businesses subject to the Commission's jurisdiction under the FCRA, public representatives, and consumers." FTC Report, 2011 WL 3020575, at *5.

substantially greater than the risk associated with a reading that was merely careless." See *Safeco*, 551 U.S. at 69–70 (determining plaintiff's alleged violation was not willful despite a non-binding FTC letter); *Long v. Tommy Hilfiger U.S.A., Inc.*, 671 F.3d 371, 377 n.3 (3d Cir. 2012) (refusing to find plaintiff's violation was willful under the Fair and Accurate Credit Transactions Act, an amendment to the FCRA, when the only guidance was a non-binding FTC "Business Alert").[8]

After applying the analysis announced in *Safeco*, the Court concludes Equifax's interpretation of the statute was at least objectively reasonable. Thus, Plaintiffs have failed to state a claim for a willful violation under § 1681b(a)(3)(A) of the FCRA.

2. **Section 1681e(a)**

Plaintiffs' second claim is that Equifax willfully violated § 1681e(a) of the FCRA, which requires a consumer reporting agency to "maintain reasonable procedures designed to . . . limit the furnishing of consumer reports to the purposes listed under section 1681b." See First Am. Compl. [#110] ¶ 38. As Equifax explains, "a plaintiff bringing a claim that a reporting agency violated the 'reasonable procedures' requirement of § 1681e must first show that the reporting agency released the report in violation of § 1681b." Reply [#115] at 10 (quoting *Washington v. CSC Credit Servs. Inc.*, 199 F.3d 263, 267 (5th Cir. 2000)). Therefore, because Plaintiffs did not show Equifax willfully violated § 1681b(a)(3)(A), they have also failed to plead a willful violation of § 1681e(a). See *Levine v. World Fin. Network Nat'l Bank*, 554 F.3d 1314, 1319 (11th Cir. 2009) ("Because it

---

[8] Plaintiffs argue a letter Equifax sent to its collections customers reminding them to use consumer reports in connection with credit transactions "is undeniable proof that Equifax knew there was a high degree of risk of violating the FCRA by furnishing reports for the Comptroller to use to collect taxes." Resp. [#112] at 11–12. The Court agrees with Equifax that this letter should not be considered for purposes of *Safeco*'s objectively reasonableness analysis. See *Safeco*, 551 U.S. at 70 n.20 (evidence of subjective intent or bad faith cannot support a willfulness finding).

was not objectively unreasonable to read the [FCRA] as allowing the sale of a report for a closed account, no investigation or procedure would have alerted [the defendant] to the possibility of an impermissible use.").

Thus, the Court GRANTS Equifax's Motion to Dismiss on the Rule 12(b)(6) grounds.

## Conclusion

Accordingly,

IT IS ORDERED that Defendant Equifax's Motion to Dismiss [#111] is GRANTED IN PART and DENIED IN PART as described in this opinion.

SIGNED this the 31st day of August 2016.

/s/ Sam Sparks
SAM SPARKS
UNITED STATES DISTRICT JUDGE